Good morning. My name is Melanie Yang. I'm representing petitioner Mr. Qingsheng Chai. May I present a court? In this case, Mr. Chai, his girlfriend suffered a forced abortion. And after he learned of the forced abortion, he went to family planning officer's office to protest the forced abortion. And he argued with the family planning director. Because of that, he was beaten, detained. Did he argue with the planning director about that? Or did he say that the planning director was a fraud? And he talked two things. Wasn't that the reason that the BIA came down the way they did? Is because they said, he didn't really fight this. He said that the director was a fraud, that the director had taken a bribe, that the director had done all this stuff. And therefore, because he was in there confronting the family planning director regarding the bribe, that that's why he was beat up. Mr. Chai had no personal dispute with the family planning director, as alleged by BIA. Before family planning director had his girlfriend forced abortion, he had no encounter with family planning director. The reason he's upset, he's mad at family planning director is she forced his girlfriend to have abortion. And he's upset about the family planning director. Probably she took the bribe from the informer, the bribe which may facilitate or expedite the forced abortion. However, the forced abortion itself is the main reason Mr. Chai went to the family planning officer's director's office to protest the action. Well, I guess, again, I'm back on substantial evidence. And here, I'm having a tough time understanding how I can get past what the BIA or the IJ did by their idea that he confronted the planning director regarding the alleged bribery, and then discussed with them why they would do an abortion when they knew that he and his girlfriend were about to get married. And so I'm just, I mean, my worry was even if he'd engaged in other resistance, he didn't suffer persecution on account of that resistance. He suffered persecution by calling the family planning director a crook, taking bribes. However, if you think without forced abortion, Mr. Chai even didn't care whether the family planning officer is a crook or not. He is upset with the family planning director because she forced his girlfriend to force abortion first. This reason made him mad at her. Of course, the family planning officer, she will say she's enforcing the Chinese government policy. On that point, probably Mr. Chai even argue with family planning officer he will be a loser because the Chinese government will not help him out on that point. Then he think, probably if I will point out she may took the bribe, on that point, maybe he can win the battle against the family planning officer, director. Well, the worry that I have is that his own testimony even confirms that he was persecuted, if at all, because of the bribe. Because he said he was released from detention. As he was released from detention, the official warned him not to further insult the government. Meaning, the respondent should not go to the government's office to expose the bribery of the director. So it seemed to be that what the IJ and the BIA were concentrating on was even confirmed by his own testimony. However, I believe the forced abortion is the central reason he wants to protest with the family planning director. If without forced abortion, then? Well, I can understand your argument, but you're not really putting the two and two together. So he went there to confront the family planning director. Was he persecuted, therefore? No. He was persecuted, or at least the evidence, substantial evidence, would seem to suggest he was persecuted for calling the family planning director a crook, taking a bribe, doing all of that. And in fact, his own testimony says, when he was released, that it was all about, don't you further insult the government with this bribery stuff. That was his own testimony. I believe these two factors are intertwined. Without forced abortion, there will be no argument about bribe, because BIA says this is his personal dispute with the family planning director. Actually, it's not, because family planning director forced the abortion, which caused him upset with the family director, which caused him to think about ways maybe to get back at the family planning director. So I believe his fight against family planning director mainly is caused by the forced abortion, and the bribe is the point he can maybe use against the family planning director, because. What are you going to do with his testimony that he didn't have any evidence about the family planning officials accepting bribes, that he merely believed his girlfriend's story from a former boyfriend had bribed the official and went to the office, and then he went to the office because he was excited? What are you going to do about that testimony? No evidence of the bribe. He just merely believed his girlfriend's story, that the former boyfriend was mad that the girlfriend and him were now together, and so he went in to bribe the official. My argument will be the central theme for his asylum is based on his protest against the forced abortion. The way the bribe exists, you know, it's just a hearsay. And it's not his base for asylum. It's not the base. That's why he went to the family planning director's office. So I believe his resistance is because he protests the forced abortion. He verbally protested. He asked why you forced my girlfriend to have abortion. He tried to keep the baby. He tried to get married as soon as possible. These are his actions of resistance. And the fact that he went to family planning director's office, he argued with them. That's why they detained him. They, like, during detention, deprived his food and water, which is very crucial treatment because I'm I cannot eat water, drink water or food for two days. That will be very severe harm to one's body. What do we do if we say this is resistance? Then the BIA suggests that it doesn't rise to the level required for persecution. That's where we were on the last case. Yes. Now, in this case, the respondent was beaten only on one occasion, did not require medical attention, and he lost his restaurant job, but he was able to get other employment immediately. Actually, this case is different from the other case we just argued. In this case, he was beaten, like slapped, beat on the chest, all over the body. I just mentioned he detained two days without food and water. And the family planning director did actually went to his employer, says, do not employ this person. He lost the job. In the John V. Holder at 611F 3D 1095, actually, I will read. It says, series of incidents of harm which the petitioner suffered, precipitated by the resistance family planning policy, of which his wife's forced abortion was part and parcel, that cumulative rose to the level of past persecution. That means his girlfriend's forced abortion. He lost a child. Girlfriend suffered physical harm. He himself suffered all this harm. Everything adds up to rose to the level of persecution. So you'd agree that even with Chang, to which you now refer, it wasn't enough just for the girlfriend to suffer the harm. He had to suffer some harm besides, right? Yes, because of method of abuse. What you're suggesting is that your client has suffered such harm. Correct. Understood. Yes. Do you want to move on to other issues? The petitioner actually was found credible. The BI and the IJSO, the facts are not at dispute. The only thing is rose to the level of persecution and on account of his resistance to the family planning policy. So if the judge has no question at this moment, I will reserve about four minutes for rebuttal. Thank you. Good morning, Your Honours, and may it please the Court. Rob Stolzer on behalf of the Attorney General. Your Honours, I want to emphasize three things for you, and that is that there was no harm rising to the level of persecution here, and the evidence doesn't compel it. That there was no nexus to a protected ground here, and the evidence doesn't compel it. And that there was no well-founded fear of future persecution in this case, and the evidence doesn't compel it. You would have to overturn all three of those holdings to send this back to the board to say that petitioner demonstrated that he was qualified for asylum. And he just didn't do it in this case, Your Honour. With respect to the harm, which you were just talking about, this is regrettable. And the immigration judge noted that this was harm, but it wasn't the extreme harm, the substantial harm required to qualify as persecution. And the immigration. The worry that I have with that, Counselor, is that it seems to me that if I look at Lynn, or I look at Lee, or even I look at Jang, this is at least at that amount of harm. Well, I think it's a close question, Your Honour. And on a close question like that, I would say that the tie goes to the board. The immigration judge noted that this was a tough decision. But whether his beating his two-day detention. I mean, this is not the normal asylum case where we've got all kind of precedent that you've got to have more than one day in prison, or you've got to be slapped a couple of times. You've got to go to the doctor. You've got to do some excess stuff. This is a different situation. This has to do with this policy that no one likes. No one wants. So we look at the cases that have to deal with this policy. And I'll be fair, I looked at Lynn. I looked at Lee. I looked at Jang. It seems to me that if he can coordinate up what he's got to coordinate up in order to have persecution, he's got it. I don't know that the case law adds to that. I would point to GU. But GU isn't about this issue, is it? No, Your Honor, it's a Christianity case. Yeah, it's a totally different kind of case. I look at those cases, too, when I have just the regular type case. But now we don't have that. Sure, Your Honor, but the definition of persecution hasn't changed for this class of cases. They still have to show persecution. It's still an extreme concept. And it still has to add up, like you say, in the cumulative, to severe harm, extreme harm, which I think the board correctly, in this case, based on its own precedents, said he didn't. Moving to my second point, which was nexus, in addition to showing that he was harmed, he has to show that he was harmed on account of a protected ground. In this case, he's suggesting it was other resistance. But even in his own briefing, he conceded that the motives of the director of the family penitentiary were mixed. That's on page 24 of his own brief when he concedes, well, her motives were mixed. And that itself is enough to sustain the board's decision in this case. Because from the evidence, it appears that if it's a mixed motive, that means that there's a bad motive and a good motive. And if there's a bad motive, isn't that enough? No, Your Honor, because the motive has to be one central reason. In this case, he went there to confront her for the family planning director. He went there to confront her for the bribe, not because he was resisting the policy, but because he was angry that she didn't give him the opportunity to marry his girlfriend before the abortion, which he thought was as a result of this bribe that occurred. And that's not other resistance to the policy. In other words, what happened to him when he got there, the beating and the detention, wasn't the result of other resistance to the family planning policy. Well, how do we know what's in the mind of the person who detained? Well, we can take what he credibly testified as to what she said, which was that he should not have accused her of taking the bribe and that she would retaliate against him in the future if he tried to make an issue of the bribe. Well, your adversary says that he was just, that was his way of essentially, he was trying to look for a way to protest what had happened. And he figured that that was as good as any other. I can only take the evidence of the record, Your Honor. And that was what was before the board. It was like, why did he go there? And what he testified to the immigration judge was he went there because he was angry over this bribe. And his girlfriend at the time, actually, if we look in the testament, she was pushing him. She said, why didn't you go back to this Chen fellow and beat him up? And he said, well, I don't want to do that. And she said, well, go do something. So he went to the family planning director and accused her of taking the bribe. And then she retaliated by having him beaten and imprisoned for the two days. Again, that's not the nexus to the other resistance to a policy or any resistance to the policy. That's retaliation for the accusation of taking the bribe to do her job. I want to emphasize, this isn't a whistleblower case. So we're essentially taking the word of the family planning official. No, Your Honor, we're taking petitioner's word. It was his job, his burden, to bring this evidence forward. And he didn't. The evidence he brought forward tends to indicate that the treatment he received was not on account of a protected ground. He would have had to bring other evidence forward. Again, we would have to be able to put our finger on that evidence and say, ah, here is the compelling evidence that she retaliated against him because of his resistance to the population control regime, which I note isn't really found throughout. The immigration judge and the board correctly noted he wasn't attempting to resist the regime. He was looking to get by on a technicality, saying, look, as long as I can marry my wife before the kid's born, I can skate. And the only reason it became an issue was because the girlfriend was forced to have the abortion early, allegedly because the ex-boyfriend came into the scene and made the bribe. So unlike the previous case, which was argued, in terms of looking for the other resistance, it's really hard to find that other resistance here. And then even when you get to the family planning officials and what they did to him, it doesn't appear that they were acting because of some other resistance. They were acting because he was accusing them of corruption. And I do want to emphasize, this isn't a whistleblower case, like the court's other line of whistleblower cases, where you see a pattern of someone attempting to get the government to behave correctly. He's not actually even argued that the government behaved incorrectly, that it was unlawful to have aborted his girlfriend's baby. And it also didn't go to higher authorities, right? Normally in a whistleblower's case, right, oh, here's corruption. I'm going to expose this. That's not what happened. He said, here's corruption, and I'm going to accuse this official to her face of it. And then she retaliated against me for that. It's not like the court's other whistleblower line of cases, Your Honor. I also want to emphasize that it wasn't a spouse. No doubt he suffered a loss, but the line of cases on this and the line of board precedent decisions on this, and I think the statute, too, emphasized that we're talking about there's a particular level of harm related to harm to one's spouse, as opposed merely to harm to one's girlfriend or friends or other people. And in this case, I think there's been some, I noticed in the briefing, there's been some conflation of the idea of, well, does she count as a spouse for this case? Well, she doesn't. They weren't married, and they never got married. So I want to say that. With respect to the third point I was talking about, the well-founded fear of future harm, I just want to note that he was safe for nine months, which militates against the idea that there is a continuing chance of harm to him in the country. And the harm in this case was not likely to occur, right? The harm that he suffered was because he confronted the family planning director to her face, which is not an issue that's likely to occur. It doesn't appear that they were going to have any trouble in the future with that. He testified that when he ran into, he randomly ran into the family planning director on the street, and she got in his face and said, you better not tell on me to higher authorities. Right, that's not a continuing threat of harm to him. He didn't indicate at all that he was intending to go to higher authorities to make the argument to expose her in some manner. And again, for the well-founded fear side, he would, again, have to show that there is some nexus. That in the future, he will be persecuted because of some resistance to this policy, which he has never stated an intent to continue to resist. Your Honors, if there are no questions, I won't belabor the court. I urge you to deny this petition for review. Any questions, Judge Gould? No questions here. Thank you. Judge Corman, thank you. You have some rebuttal time. Yes, Your Honor. I briefed also evidence in the record. The petitioner at the family planning's office did say, you know, why you forced my girlfriend to have abortion, will get married. I want this case. It's evidence also on the record. The government counsel just downplayed the importance of this testimony. And also, the family planning officer calls you are a violator of Chinese family planning law. You know, you have no stand to argue with me. So the family planning officer's counter-argument against the petitioner also indicated, she's saying, oh, you already violated the Chinese family planning policy. You and your girlfriend get pregnant before you even got married. These conversations, this testimony also on the record, indicates the main reason that's why petitioner went to the family planning office is for the protest of the forced abortion. And I briefed one central reason for asylum does not preclude there's any other facilitator factors also motivated the argument, caused the confrontation. So the fact that the petitioner also accused the family planning officer may take bribe does not reduce the importance of his protest against the family planning policy. So I believe the nexus exists. In the Lin case, actually, the other resistance is to prevent the family planning officers to take away their personal properties. So that you could discuss the point counsel raised about this is not a spouse. OK. This one has. That is one thing that you haven't addressed yet and erased. Yes, I will address. In John V. Holder, that 2010 611F3D case, that petitioner is also unmarried. So another Ninth Circuit case, Marv V. Holder, 2004, that petitioner is also unmarried. So marriage is not a precondition to be qualified for this kind of persecution. The fact that she is his boyfriend, he is the father of that aborted fetus, this made him in combination of other. Does it matter that they were never married? I believe it doesn't matter. I mean, if I looked at the case that you just cited to me, it didn't seem to me that in those situations it was a case where they just never got together. It was a case where there was a situation where they weren't married at the time, but they thereafter did. I will say the broke of the relationship is also part caused by this incident. If the family planning officer did not force the girlfriend to have abortion, they will have no conflict. He will not suffer persecution, lost a job. All these things made the relationship suffer. OK. You've addressed those issues. Anything further? Also, about no well-founded fear of future persecution, if the petitioner can prove he suffered past persecution and the persecution is on account of protected grant, he does not necessarily need to independently show he still has a well-founded fear of future persecution. Alternative, I believe the petitioner still have well-founded fear of future persecution. One is the family planning officer threatened him one month after that persecution on the street says, if you do anything against the government, against me, you will suffer the consequences. Secondly is the petitioner still against the family planning policy in China. He probably will marry in the future, have more kids. That's still his particular opinion. So it's possible if he is forcibly returned to China, he will get married, have more child, and he will suffer the consequences of against the family planning policy. Thank you very much. Judge Gould, do you have any questions? No, no questions. All right, thank you very much. Thank you, Your Honor. Case 10-72725 is submitted. And we'll move to case 12-50207, USA versus Bowser. That case is submitted on the briefs. And therefore, we won't need argument. And so we'll move to case 12-50435, which is the USA versus, unless I'm going to kill, but I'll say it anyway, OLOQ.
judges: Korman, GOULD, SMITH